## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**CRYSTAL PERRY,**

                    Plaintiff,

v.

**COUNTY OF WAYNE,** a governmental entity,
and **DONNA WILSON AND
MATTHEW CARMONA**, in their official
and individual capacities,

                    Defendants.

Case No.  24-
Hon.

_____/

**MILLER COHEN, P.L.C.**
Keith D. Flynn (P74192)
Kurt N. Koning (P78227)
*Attorneys for Plaintiff*
7700 Second Avenue, Suite 335
Detroit, Michigan 48202
Phone: (313) 964-4454
kflynn@millercohen.com
kurtkoning@millercohen.com

_____/

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

**NOW COMES** Plaintiff, **CRYSTAL PERRY,** by and through her attorneys,

**MILLER COHEN, P.L.C.,** for her Complaint and Demand for Trial by Jury against

the County of Wayne, Donna Wilson, and Matthew Carmona, in their official and

individual capacities, and states as follows:

## PARTIES

1.    Plaintiff, Crystal Perry, is a former employee of Defendant and worked in Wayne County during all relevant times in this action. Plaintiff is a current resident of the City of Lansing, County of Ingham, State of Michigan.

2.    Defendant is a corporation doing business in the State of Michigan with a resident agent address in Detroit, Michigan.

## JURISDICTION AND VENUE

3.    This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff brings his claims pursuant to the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*.

4.    For the state law causes of action, supplemental jurisdiction is appropriate under 28 U.S.C. § 1367. The pendant claim is part of the same case or controversy. It does not substantially predominate. It does not raise novel or complex issues. Therefore, exercise of jurisdiction is proper.

5.    Venue is appropriate in this court because Defendants are located in the Eastern District, and all events in controversy took place in the Eastern District.

## GENERAL ALLEGATIONS

6.    Plaintiff, Crystal Perry, was hired as the Equal Employment Opportunity ("EEO") Coordinator for Defendant Wayne County ("Defendant" or "the County") on or about May 2021.

7.      In her capacity as EEO Coordinator, Plaintiff was tasked with investigating and resolving all harassment and discrimination complaints that involve the County.

8.      Plaintiff reported to the Director of Labor Relations for Defendant.

9.      Plaintiff completed her probationary period on or about October 2021.

10.     Plaintiff reported to Joseph Martinico from her date of hire until Martinico's retirement on or about August 2022.

11.     During her time reporting to Martinico, Plaintiff was praised for her stellar performance.

12.     During her time reporting to Martinico, Defendant took no disciplinary actions against Plaintiff.

13.     Prior to her termination, Defendant took no disciplinary actions against Plaintiff.

14.     During her time reporting to Martinico, Plaintiff enjoyed wide discretion in performing her duties, with minimal supervisory intervention.

15.     Matthew Carmona became interim Director of Labor Relations on or about August 2022.

16.     Plaintiff reported to Carmona from the time he became Interim Director of Labor Relations through the date of Plaintiff's termination.

17.     Donna Wilson was the Director of Personnel/Human Resources ("HR") for Defendant from October 2022 through the date of Plaintiff's termination.

18.     After Plaintiff began reporting to Carmona, Defendant regularly interfered with Plaintiff's duties as EEO Coordinator.

19.     Defendant prevented Plaintiff from investigating select complaints in Plaintiff's purview as EEO Coordinator.

20.     Defendant removed duties from Plaintiff's role as EEO Coordinator.

21.     Defendant directed Plaintiff not to respond to or handle complaints involving the Michigan Department of Civil Rights ("MDCR").

22.     Defendant directed Plaintiff not to list herself as Defendant's designated contact on MDCR investigations.

23.     Defendant directed Plaintiff to not investigate complaints of disability discrimination by County employees.

24.     Defendant directed Plaintiff never to memorialize any MDCR or EEO complaints against Defendant.

25.     Defendant removed references to protected categories under Title VII and how to file internal EEO complaints from Plaintiff's training modules.

26.     Defendant altered the content of complaints drafted by Plaintiff, including statements by the charging party.

27.     Defendant told Plaintiff that she made "too many EEO complaints."

28.     Defendant interfered with Plaintiff's attempts to investigate complaints against high-level managers and executives for Defendant.

29.     Carmona repeatedly told Ms. Perry "Just because Wayne County has bad managers and officials does not make the complaint an act of discrimination."

30.     In 2022, several employees of Defendant made allegations that Melita Jordan, Defendant's Director of Health, Human and Veteran's Services ("HHVS") fostered a hostile work environment.

31.     In 2022, Jordan's executive assistant alleged that Jordan physically assaulted her.

32.     Jordan's executive assistant reported the assault to Donna Wilson and Defendant's Chief Operating Officer, Genelle Allen.

33.     Allen instructed Jordan's executive assistant not to report the assault an outside agency.

34.     Jordan's executive assistant reported the assault to the Detroit Police Department ("DPD").

35.     Defendant attempted to prevent Plaintiff from investigating the allegations against Jordan.

36.     Defendant directed Plaintiff to stop investigating the allegations against Jordan.

37.    During Plaintiff's investigation of the allegations against Jordan, Defendant attempted to intimidate Plaintiff with threats, defamatory and/or degrading statements, and yelling.

38.    During Plaintiff's investigation of the allegations against Jordan, Donna Wilson told Jordan not to worry about it.

39.    During Plaintiff's investigation of the allegations against Jordan, Defendant directed Plaintiff to turn over her personal notes and witness lists.

40.    During Plaintiff's investigation of the allegations against Jordan, Donna Wilson confronted witnesses that Plaintiff interviewed.

41.    During Plaintiff's investigation of the allegations against Jordan, numerous employees alleged that Jordan violated Title VII of the Civil Rights Act of 1964 ("Title VII") and the Elliot Larsen Civil Rights Act ("ELCRA") by discriminating against employees based on their age, gender, body-image, religion and/or race.

42.    During Plaintiff's investigation of the allegations against Jordan, numerous employees alleged that Jordan violated the Family Medical Leave Act ("FMLA") by threatening them with discipline if they refused to work during their FMLA leaves.

43.    During Plaintiff's investigation of the allegations against Jordan, numerous employees alleged that Jordan and Donna Wilson violated the Wage and

Fringe Benefits Act ("WFBA") by refusing to pay employees who left County employment their unused sick and annual/vacation leave unless they signed a nondisclosure agreement ("NDA") and general waiver of all claims against the County.

44.   On or about November 2022, Plaintiff reported the details of her investigation to Defendant.

45.   On or about December 2022, Plaintiff reported the conclusions of her investigation to the complainants.

46.   Despite Plaintiff's findings and recommendations, Defendant prevented employees from filing EEO complaints against Jordan.

47.   Starting on or about February 2023, Plaintiff made numerous internal harassment and retaliation complaints against her superiors.

48.   On or about February 2023, Plaintiff submitted a complaint to the Department of Justice Civil Rights Division regarding harassment and retaliation by her superiors.

49.   On or about February 2023, Plaintiff submitted an inquiry to EEOC regarding harassment and retaliation by her superiors.

50.   Defendant hired Perkins Law Group ("PLG") to investigate Plaintiff's internal harassment and retaliation complaints against her supervisors.

51.     Hiring PLG created a conflict of interest that incentivized PLG to make findings in favor of Defendant.

52.     Defendant directed Ms. Perry to submit to an interview with PLG.

53.     Plaintiff was not allowed an opportunity to review for factual accuracy the statements that PLG claimed she made during her interview.

54.     On or about June 2023, PLG concluded that Plaintiff's complaints against her supervisors were unsubstantiated.

55.     On or about June 21, 2023, Carmona informed Plaintiff about the results of the PLG investigation into her complaints.

56.     On or about June 27, 2023, Carmona berated Plaintiff in front of other attendees during a virtual meeting.

57.     On or about June 28, 2023, Carmona terminated Plaintiff's employment.

58.     Carmona told Plaintiff that her termination was "personal."

59.     Plaintiff asked Carmona when she should expect to receive payment for her unused sick and annual/vacation leave.

60.     Carmona instructed Plaintiff to call him "down the road" if Plaintiff "wanted to negotiate a severance."

61.     Plaintiff received a letter from Defendant dated June 27, 2023, stating that her  "at-will position…will end."

62.     The letter dated June 27, 2023, did not state a reason for Plaintiff's termination.

63.     Under County policies, Plaintiff was not an "at will employee" and could only be terminated for cause.

64.     Contrary to County policies, Plaintiff's termination was not reviewed by the Civil Service Board.

65.     Contrary to County policies, Ms. Perry was not provided with an opportunity to appeal her termination.

66.     Plaintiff filed for unemployment benefits with the Unemployment Insurance Agency ("UIA").

67.     Defendant told the UIA that Plaintiff was terminated for "misconduct."

68.     Defendant told the UIA that Plaintiff was terminated due to "personality differences."

69.     On or about July 14, 2023, the UIA rejected Defendant's arguments and determined that Plaintiff was not disqualified for benefits under MES Act, Sec. 29(1)(b).

70.     On or about July 25, 2023, Defendant offered to pay Plaintiff the monetary value of her unused sick and annual/vacation leave in return for Plaintiff signing an NDA and waiver of claims.

71.     The NDA and waiver offer violated the Wage and Fringe Benefits Act ("WFBA").

72.     Defendant pressured Plaintiff to sign the NDA and waiver of claims.

73.     Plaintiff refused to sign the NDA and waiver of claims.

## COUNT I
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

74.     Plaintiff incorporates by reference all preceding paragraphs.

75.     Plaintiff was an employee of Defendant as defined by Title VII of the Civil Rights Act of 1964 ("Title VII").  42 U.S.C. § 2000e(f).

76.     Defendant is an employer as defined by Title VII.  42 U.S.C. § 2000e(b).  It has more than 15 employees and is engaged in an industry effecting commerce.

77.     Title VII prohibits retaliation against employees for reporting race, age, and gender discrimination.  42 U.S.C. § 2000e.

78.     In violation of Title VII, Defendant retaliated against Plaintiff for complaining about race, age, and gender discrimination.

79.     Ultimately, Plaintiff was terminated without a legitimate non-discriminatory reason.

80.     Defendant's discriminatory and retaliatory conduct exhibited a willful and/or reckless indifference to Plaintiff's protected right to be free from race, age, and gender discrimination.

81.     As a direct and proximate result of Defendant's discriminatory and harassing conduct, Plaintiff has lost wages and benefits; her future earning capacity has been substantially impaired; she has suffered severe emotional distress, humiliation, pain and suffering, and loss of enjoyment of life; and she has suffered other non-pecuniary losses, all of which will be proved at the trial of this action.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A.     Granting Plaintiff all available compensatory damages for economic injury, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive, and other damages;

B.     Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees, and an effective complaint process for harassment, to end the illegal harassment, discrimination, and retaliation described in the allegations above;

C.     Granting Plaintiff reasonably attorneys' fees and costs incurred in this litigation; and

D.     Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## **COUNT II**

## **VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT AGE DISCRIMINATION**

82.    Plaintiff incorporates by reference all preceding paragraphs.

83.    Defendant is an employer as defined by the Age Discrimination in Employment Act ("ADEA").  29 U.S.C. § 630(b).

84.    The ADEA prohibits discrimination on the basis of age.  29 U.S.C. § 623(a).

85.    Plaintiff is over 40 years old.

86.    In violation of the ADEA, Defendant discriminated against Plaintiff due to her age.

87.    Plaintiff complained to Defendant about the unlawful age discrimination on several occasions.

88.    Despite these complaints, Defendant refused to take remedial action to address the age discrimination that Plaintiff was subjected to.

89.    Ultimately, Plaintiff was terminated without a legitimate non-discriminatory reason.

90.    Defendant's discriminatory and retaliatory conduct exhibited a willful and/or reckless indifference to Plaintiff's protected right to be free from age discrimination.

91.   As a direct and proximate result of Defendant's discriminatory and harassing conduct, Plaintiff has lost wages and benefits; her future earning capacity has been substantially impaired; she has suffered severe emotional distress, humiliation, pain and suffering, and loss of enjoyment of life; and she has suffered other non-pecuniary losses, all of which will be proved at the trial of this action.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A.   Granting Plaintiff all available compensatory damages for economic injury, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive, and other damages;

B.   Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees, and an effective complaint process for harassment, to end the illegal harassment, discrimination, and retaliation described in the allegations above;

C.   Granting Plaintiff reasonably attorneys' fees and costs incurred in this litigation; and

D.   Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## COUNT III
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT RETALIATION

92.   Plaintiff incorporates by reference all preceding paragraphs.

93.   Defendant is an employer as defined by the Age Discrimination in Employment Act ("ADEA").  29 U.S.C. § 630(b).

94.   Plaintiff complained to Defendant about the unlawful age discrimination on several occasions.

95.   Despite these complaints, Defendant refused to take remedial action to address the age discrimination that Plaintiff was subjected to.

96.   The ADEA prohibits retaliation against employees for reporting age discrimination.  29 U.S.C. § 623(d).

97.   In violation of the ADEA, Defendant retaliated against Plaintiff for making said complaints.

98.   Ultimately, Plaintiff was terminated without a legitimate non-discriminatory reason.

99.   Defendant's discriminatory and retaliatory conduct exhibited a willful and/or reckless indifference to Plaintiff's protected right to be free from age discrimination.

100.   As a direct and proximate result of Defendant's discriminatory and harassing conduct, Plaintiff has lost wages and benefits; her future earning capacity

has been substantially impaired; she has suffered severe emotional distress, humiliation, pain and suffering, and loss of enjoyment of life; and she has suffered other non-pecuniary losses, all of which will be proved at the trial of this action.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A.     Granting Plaintiff all available compensatory damages for economic injury, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive, and other damages;

B.     Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees, and an effective complaint process for harassment, to end the illegal harassment, discrimination, and retaliation described in the allegations above;

C.     Granting Plaintiff reasonably attorneys' fees and costs incurred in this litigation; and

D.     Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## <u>COUNT IV</u>

### **VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT – DISCRIMINATION**

101.   Plaintiff incorporates by reference all preceding paragraphs.

102. Plaintiff is female, over the age of 40 and African-American.

103. Defendant is an employer as defined by the ELCRA. M.C.L. § 37.2201(a).

104. The ELCRA prohibits discrimination on the basis of race, age, and gender. M.C.L. § 37.2202.

105. In violation of the ELCRA, Defendant retaliated against and eventually terminated Plaintiff for reporting issues of race, age, and gender discrimination.

106. Ultimately, Plaintiff was terminated without a legitimate non-discriminatory reason.

107. Defendant's discriminatory and retaliatory conduct exhibited a willful and/or reckless indifference to Plaintiff's protected right to be free from discrimination on the basis of race, age, and gender.

108. As a direct and proximate result of Defendant's discriminatory and harassing conduct, Plaintiff has lost wages and benefits; her future earning capacity has been substantially impaired; she has suffered severe emotional distress, humiliation, pain and suffering, and loss of enjoyment of life; and she has suffered other non-pecuniary losses, all of which will be proved at the trial of this action.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A. Granting Plaintiff all available compensatory damages for economic injury, extreme mental and emotional distress, humiliation, outrage, economic

damages, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive, and other damages;

B.      Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees, and an effective complaint process for harassment, to end the illegal harassment, discrimination, and retaliation described in the allegations above;

C.      Granting Plaintiff reasonably attorneys' fees and costs incurred in this litigation; and

D.      Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## <u>COUNT V</u>

## **VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT - RETLIATION**

109.   Plaintiff incorporates by reference all preceding paragraphs.

110.   Plaintiff is female, over the age of 40 and African-American.

111.   Defendant is an employer as defined by the ELCRA.   M.C.L. § 37.2201(a).

112.   In violation of the ELCRA, Defendant fostered a work environment that discriminated against employees on the basis of age, race, and gender.

113.   Plaintiff informed Defendant that this conduct was occurring and illegal on several occasions.

114.   Despite these complaints, Defendant refused to take remedial action to address the discrimination reported by Plaintiff.

115.   The ELCRA prohibits retaliation.  M.C.L. § 37.2202.

116.   In violation of the ELCRA, Defendant retaliated against Plaintiff for complaining about discrimination on the basis of age, race, and gender.

117.   Ultimately, Plaintiff was terminated without a legitimate non-discriminatory reason.

118.   Defendant's discriminatory and retaliatory conduct exhibited a willful and/or reckless indifference to Plaintiff's protected right to be free from discrimination on the basis of age, race, and gender.

119.   As a direct and proximate result of Defendant's discriminatory and harassing conduct, Plaintiff has lost wages and benefits; her future earning capacity has been substantially impaired; she has suffered severe emotional distress, humiliation, pain and suffering, and loss of enjoyment of life; and she has suffered other non-pecuniary losses, all of which will be proved at the trial of this action.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A.   Granting Plaintiff all available compensatory damages for economic injury, extreme mental and emotional distress, humiliation, outrage, economic

damages, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive, and other damages;

B.     Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees, and an effective complaint process for harassment, to end the illegal harassment, discrimination, and retaliation described in the allegations above;

C.     Granting Plaintiff reasonably attorneys' fees and costs incurred in this litigation; and

D.     Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## COUNT VI
## TERMINATION IN VIOLATION OF PUBLIC POLICY
### (Pled in the Alternative)

120.   The above-stated paragraphs are restated by reference as if fully plead herein.

121.   Ms. Perry was employed by the County of Wayne.

122.   As described above, Ms. Perry was repeatedly directed by Defendant's leadership to ignore civil rights violations.

123.   Defendant's directives to Ms. Perry were violations of legislative enactments.

124.   Defendant's directives to Ms. Perry were violations of legal principles.

125.   Ms. Perry refused to violate the law.

126.   Ms. Perry's refusal and failure to violate the law was a determinative factor in the County's termination of Ms. Perry.

127.   Plaintiff's actions described above violated Michigan law against termination in violation of public policy.

128.   Ms. Perry has suffered substantial damages as a direct and proximate result of Defendant's actions.

**WHEREFORE** Plaintiffs requests that this Honorable Court to grant her all available compensatory damages, jointly and severally, for economic injury, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, exemplary damages, and other damages; and grant any other such relief as shall meet equity and good conscience.

Respectfully submitted,

**MILLER COHEN, P.L.C.**

By:     */s/ Kurt N. Koning*
        Kurt N. Koning (P78227)
        Keith D. Flynn (P74192)
        *Attorneys for Plaintiff*
        7700 Second Avenue, Suite 335
        Detroit, MI  48226
        (313) 964-4454 Phone
Date: August 6, 2024          kurtkoning@millercohen.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**CRYSTAL PERRY,**                                    Case No.  24-
                                                     Hon.

                        Plaintiff,

v.

**COUNTY OF WAYNE,** a governmental entity,
and **DONNA WILSON AND**
**MATTHEW CARMONA**, in their official
and individual capacities,

                        Defendants.

_____/

**MILLER COHEN, P.L.C.**
Keith D. Flynn (P74192)
Kurt N. Koning (P78227)
*Attorneys for Plaintiff*
7700 Second Avenue, Suite 335
Detroit, Michigan 48202
Phone: (313) 964-4454
kflynn@millercohen.com
kurtkoning@millercohen.com

_____/

## DEMAND FOR TRIAL BY JURY

**NOW COMES** Plaintiff, Crystal Perry, by and through her attorneys,

**MILLER COHEN, P.L.C.**, and hereby demands a trial by jury, for all issues so

triable.

By:      */s/ Kurt N. Koning*
         Kurt N. Koning (P78227)
         Keith D. Flynn (P74192)
         *Attorneys for Plaintiff*
         7700 Second Avenue, Suite 335
         Detroit, MI  48226
         (313) 964-4454 Phone
Date: August 6, 2024          kurtkoning@millercohen.com