UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRYSTAL PERRY,

    PLAINTIFF,

v.

COUNTY OF WAYNE, DONNA
WILSON and MATTHEW CARMONA,

    DEFENDANTS.
_____/

Case No. 24-12056

HON. DENISE PAGE HOOD

**ORDER GRANTING MOTION TO DISMISS (#6),
<u>DISMISSING AND CLOSING ACTION</u>**

**I.    BACKGROUND**

Plaintiff Crystal Perry filed a Complaint on August 6, 2024 against Defendants County of Wayne, Donna Wilson and Matthew Carmona alleging: Violation of Title VII of the Civil Rights Act of 1964 (Count I); Violation of the Age Discrimination in Employment Act - Age Discrimination (Count II); Violation of the Age Discrimination in Employment Act - Retaliation (Count III); Violation of the Elliott-Larsen Civil Rights Act - Discrimination (Count IV); Violation of the Elliott-Larsen Civil Rights Act - Retaliation (Count V); and, Termination in Violation of Public Policy - Pled in the Alternative (Count VI). (ECF No. 1)

Perry is a former employee of Wayne County.  She was hired as the Equal Employment ("EEO") Coordinator for Wayne County in May 2021 and reported to the Director of Labor Relations, Joseph Martinico, until he retired in August 2022.  Perry was praised for her stellar performance during this time.  *Id*. at PageID.2-.3.

Carmona became interim Director in August 2022 after Martinico's retirement.  Wilson was the Director of Personnel/Human Resources from October 2022 through Perry's termination.  Perry asserts that Carmona prevented Perry from investigating select complaints as EEO Coordinator, removed duties from Perry's role and directed Perry not to respond to or handle complaints involving the Michigan Department of Civil Rights.  Carmona directed Perry not to investigate complaints of disability discrimination, never to memorialize any MDCR or EEO complaints, removed references to protected categories under Title VII and how to file EEO complaints from training modules, altered content of complaints drafted by Perry and statements by the charging party.  Carmona told Perry she made "too many EEO complaints,"  interfered with Perry's investigation against high-level managers and executives, and told Perry "Just because Wayne County has bad managers and officials does not make the complaint an act of discrimination."  *Id*. at PageID.3-.5.

In 2022, several employees of Defendant made allegations that Melita Jordan, Wayne County's Director of Health, Human and Veteran's Services, fostered a hostile work environment.  Jordan's executive assistant alleged that Jordan physically assaulted her and reported the assault to Wilson and Wayne County's Chief Operating Officer, Genelle Allen.  Allen instructed Jordan's executive assistant not to report the assault to an outside agency.  Jordan's executive assistant reported the assault to the Detroit Police Department ("DPD"). Carmona directed Perry to stop investigating the allegations against Jordan. However, Perry continued with the investigation on Jordan and the various complaints by employees against Jordan.  Perry reported the details of her investigation in November 2022 to Defendant and in December 2022, Perry reported her conclusions of her investigation to the various complainants, but Defendants prevented the employees from filing EEO complaints against Jordan. *Id*. at PageID.5-.7.

In February 2023, Perry made numerous internal harassment and retaliation complaints against her superiors.  She submitted a complaint to the Department of Justice Civil Rights Division and an inquiry to the EEOC.  *Id*. at PageID.7.  Wayne County hired the Perkins Law Group ("PLG") to investigate Perry's complaints against her supervisors.  On June 21, 2023, Carmona informed Perry about the

3

results of the PLG investigation that her complaints were unsubstantiated. Carmona berated Perry in front of other attendees at a virtual meeting. Perry was terminated on June 28, 2023. *Id*. at PageID.7-.8. Carmona told Perry that her termination was "personal." *Id*. On July 25, 2023, Defendants offered to pay Perry the monetary value of her unused sick and annual/vacation leave in return for Perry signing a Non-Disclosure Agreement and waiver of claims, which Perry refused to so sign. *Id.* at PageID.9-.10.

On September 22, 2023, Perry filed a State court action before the Wayne County Circuit Court, State of Michigan, asserting a claim under Michigan's Whistleblower's Protection Act and a claim for violation of Michigan Public Policy. (ECF No. 6, PageID.73-.85) The State complaint notes that Perry has a pending charge before the EEOC alleging age discrimination, race discrimination and retaliation claims and that upon receipt of a right to sue letter, Perry intends to amend the complaint to include those claims. *Id*. at PageID.74. The named Defendants in the State action are the same as in the instant action–Wayne County, Wilson, and Carmona. *Id*. at PageID.74-.75.

Perry received the first right to sue letter from the EEOC on November 1, 2023. *Id*. at PageID.86-.91. Instead of amending her State complaint, Perry requested that the EEOC rescind the first right to sue letter. The EEOC granted

4

Perry's request on January 29, 2024. Defendants claim that at that time, there was just one day left before the statutory deadline to amend the State complaint to add the discrimination and retaliation claims. *Id*. at PageID.93.

On May 8, 2024, Perry sought and received a second right to sue letter from the EEOC. *Id*. at PageID.95-.99. Defendants claim that Perry then had until August 6, 2024 to amend her State complaint to include the discrimination and retaliation claims as additional counts. Perry did not do so but instead filed the instant Complaint in federal court on August 8, 2024.

Both complaints allege the same Defendants, as noted above. Defendants assert that 74 of the 128 allegations in the federal Complaint are identical to those in the State Complaint. (*Compare*, Fed. Compl. ¶¶ 6-62; 65-73; 121-128, *with* State Compl. ¶¶ 13-78; 94-101). Defendants further assert that the relief sought in both cases are identical, and that Perry reasserts the same public policy claim in both actions, with identical supporting allegations. (*Compare*, Fed. Compl. ¶¶ 121-128, *with* State Compl. ¶¶ 94-101).

This matter is before the Court on Defendants' Motion to Dismiss. Briefs have been filed and a hearing held on the matter.

## II     ANALYSIS

### A.     Standard of Review

Rule 12(b)(6) of the Rules of Civil Procedure provides for a motion to dismiss based on failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the

defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

### B. Michigan's Compulsory Joinder Rule / Res Judicata

Defendants seek to dismiss the case, or, alternatively, to stay the matter pending the State action. Defendants assert that Perry is pursuing parallel litigation in both State and federal courts, based on the same transactions and occurrences, involving the same parties, and seeking identical relief which they claim violates Michigan's compulsory joinder rules. See MCR 2.203(A). Defendants assert that both actions involve the same Parties and concern the same legal issue – whether Perry was wrongfully terminated from her employment.

In her response, Perry does not dispute that the same Parties are involved and that the same ultimate legal issue is alleged in the State and Federal Complaints as to whether Perry was wrongfully terminated.

MCR 2.203(A) provides,

> Compulsory Joinder. In a pleading that states a claim against an opposing party, the pleader must join every claim that the pleader has against that opposing party at the time of serving the pleading, if it arises out of the transaction or occurrence that is the subject matter of the action and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

Mich. Ct. R. 2.203. "In determining whether two claims arise out of the same transaction or occurrence for purposes of MCR 2.203(A), res judicata principles

7

should be applied." *Garrett v Washington*, 314 Mich App 436, 451; 886 NW2d 762 (2016). The doctrine of res judicata in Michigan is applied broadly to bar "not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair v. Michigan*, 470 Mich. 105, 121, 680 N.W.2d 386 (2004). The doctrine is "employed to prevent multiple suits litigating the same cause of action." *Id*. Specifically, the doctrine of res judicata is a judicially created doctrine that serves to relieve parties of the cost and aggravation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication by preventing inconsistent decisions. *Pierson Sand & Gravel, Inc. v. Keeler Brass Co.*, 460 Mich. 372, 380, 596 N.W.2d 153 (1999). Importantly, res judicata is intended to "promote fairness, not lighten the loads of the state court by precluding suits whenever possible." *Id*. at 383, 596 N.W.2d 153. Accordingly, res judicata will not be applied when to do so would subvert the intent of the Legislature. *Bennett v. Mackinac Bridge Auth*., 289 Mich.App. 616, 630, 808 N.W.2d 471 (2010). The doctrine of res judicata bars a subsequent action when "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair*, 470 Mich. at 121, 680 N.W.2d 386. In addition, the prior action must also

8

have resulted in a final decision. *Richards v. Tibaldi*, 272 Mich.App. 522, 531, 726 N.W.2d 770 (2006).

Michigan's broad interpretation of the third element of the res judicata doctrine has been referred to as a "same transaction test," as distinguished from a "same evidence test." *Adair*, 470 Mich. at 123–125, 680 N.W.2d 386. Under the same-evidence test, the issue is whether the same evidence is required to prove the claimed theory of relief. *Id*. Under the same-transaction test, the question is more pragmatic, with claims viewed in factual terms regardless of the number of variant legal theories that might support relief. *Id*. The fact that differing claims may require different evidence might be relevant to deciding if the claims arise from the same transaction, but it is not dispositive. *Id*. at 124–125, 680 N.W.2d 386. Rather, quoting 46 Am. Jur. 2d, Judgments, § 533, p. 801, and adding emphasis, the Michigan Supreme Court has stated, "'Whether a factual grouping constitutes a "transaction" for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in time, space, origin, or motivation, [and] whether they form a convenient trial unit....'" *Adair*, 470 Mich. at 125, 680 N.W.2d 386 (alteration in original).

In this case, there has been no indication that the State court action has been resolved. However, based on a review of both complaints, the other two elements

of res judicata have been met. Both actions involve the same parties or their privies, and the matter in the second case was, or could have been, resolved in the first. Perry argues that but for Defendants' refusal to stipulate to amend her State court action, she would have brought the claims in the State court. It is noted Perry has not set forth a reason as to why she did not file a motion to amend her Complaint in State court. She makes it sound as if the only way to amend the Complaint was by stipulation, which Defendants did not agree to.

However, because the compulsory joinder rule is a State court rule, the Court is not bound to dismiss this case based on that rule. Although res judicata may apply in this case, if there was already a resolution of the State court action, the Court denies Defendants' motion based on MCR 2.203(A) without prejudice.

      C.    **Abstention under the *Colorado River* Doctrine**

Defendants next argues that the Court should abstain from exercising its jurisdiction under the *Colorado River* abstention doctrine in deference to the State court proceeding. Perry responds that because Defendants prevented her from joining her claims in the State action (in that Defendants did not agree to stipulate to the amendment), under the unclean hands doctrine, the party cannot come to the court seeking equity where that party has engaged in reprehensible conduct with respect to the subject matter in the action.

10

Before the *Colorado River* doctrine can be applied, the Court must first determine that the concurrent state and federal actions are actually parallel. *See Crawley v. Hamilton County Comm'rs*, 744 F.2d 28 (6th Cir.1984). "[E]xact parallelism" is not required: [i]t is enough if the two proceedings are substantially similar." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir.1989); *Mathes v. Gorcyca*, No. 09-10582, 2010 WL 1417624, at *2 (E.D. Mich. Apr. 7, 2010). Based on the Court's review of both State and Federal complaints, both are actually parallel. The parties are the same and the underlying facts involve Perry's employment with and termination by Wayne County. The Court now addresses the abstention argument.

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). *Colorado River* does permit abstention under certain exceptional circumstances when there is a clear federal policy to avoid piecemeal adjudication. *Id*. at 819; *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). "A necessary requirement for application of this *Colorado River* doctrine, however, is the presence of a parallel, state proceeding." *Crawley v. Hamilton*

*County Comm'rs*, 744 F.2d 28, 31 (6th Cir.1984). *See also Romine v. Compuserve Corp.*, 180 F.3d 337, 339 (6th Cir.1998). A number of factors to determine whether abstention is appropriate under *Colorado River*, includes:

> (1) whether the state court or the federal court has assumed jurisdiction over the res or property; (2) which forum is more convenient to the parties; (3) whether abstention would avoid piecemeal litigation; (4) which court obtained jurisdiction first; and (5) whether federal law or state law provides the basis for the decision on the merits.

*United States v. Commonwealth of Kentucky*, 252 F.3d 816, 827 (6th Cir.2001) (citing *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15–16 (1983)). "No one factor is necessarily determinative," and the court must undertake "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighed in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 15.

After carefully balancing of these factors, the Court concludes that abstention is appropriate. The first factor—whether a res is involved—has no application in that Perry is seeking monetary damages and weighs against abstention. As to the second factor, because both forums are convenient, it also weighs against abstention.

Regarding the remaining factors, however, all weigh in favor of abstention. The third factor–preventing piecemeal litigation–if this Court were to exercise its

jurisdiction over the federal Complaint, adjudicating this case would result in piecemeal litigation. Discovery would need to be taken in both cases, which would be duplicative. Scheduling hearings on motions, a trial and other matters would need to be done in both cases. Different outcomes in motions are possibilities. Piecemeal litigation would be avoided if one case was used to resolve all claims.

The fourth factor–jurisdiction was obtained first in the Wayne County Circuit Court case on September 22, 2023. The instant case was filed almost a year later on August 6, 2024.

Addressing the fifth factor, the governing law, both state and federal courts have concurrent jurisdiction to hear Perry's claims as it relates to the discrimination claims. "As long as the state provides an opportunity to litigate constitutional claims, abstention is required, even if a plaintiff fails to avail himself of this opportunity." *Rondigo, LLC v. Twp. of Richmond*, No. 08–10432, 2009 WL 3064896, at *12 (E.D. Mich. Sept. 22, 2009) (citing *Juidice v. Vail*, 430 U.S. 327, 337 (1977)). There is no reason why the State court is not able to adequately protect Perry's interest in that some of the claims have similar elements as the State law claims. In any event, as to the State law claims raised in the federal complaint, the Court applies State law to those claims. Overall, abstention is

13

warranted as the same parties are involved and the factual events all involve the employment and termination of Perry.

### D. Unclean Hands

Perry argues that it is Defendants' fault that she failed to amend the State complaint in the State Action after receiving her second right to sue letter, Defendants' "refusal to allow Plaintiff to amend her Complaint in [the] State Case … left [Plaintiff] with ***no choice*** but to file a separate claim in federal court." (ECF No. 10, PageID.271) (emphasis added). As Defendants pointed out, MCR 2.118(A)(2), provides a plaintiff with two choices to amend a complaint: obtaining consent from the adverse party or seeking leave from the court.  Perry chose to seek consent from Defendants, which Defendants declined as was their right. When Defendants did not so consent, Perry did not move for leave to amend the State complaint, but instead filed the instant federal complaint.  Perry's failure to so move before the State court should not be rewarded by allowing the federal complaint to move forward in federal court. *See Founders 14, LLC v. Meklir*, No. 04-CV-74190-DT, 2005 WL 8154736, at *5 (E.D. Mich. May 19, 2005) (favoring abstention where a plaintiff did not seek to "add the other parties or claims (now asserted in the federal case) directly related to the parties' underlying state court dispute.").   It is disingenuous for Perry to blame Defendants as the reason for

14

Perry not filing an amended State complaint, where it is common practice in litigation, both at the State and federal levels, for a party to move to amend a pleading if the other party refuses to consent to an amendment.

Perry raises the "unclean hand" argument as to why Defendants should not be allowed to move for dismissal of the federal complaint. "The concept of unclean hands may be employed by a court to deny injunctive relief where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1383 (6th Cir.1995); *Lucky's Detroit, LLC v. Double L, Inc.*, 533 F. App'x 553, 561–62 (6th Cir. 2013). The unclean hands concept is not applicable in this instance since Defendants are not filing a complaint against Perry seeking equitable or injunctive relief, such as a temporary restraining order or preliminary injunction or disgorgement related to any claims filed against Perry. Instead, Defendants are seeking dismissal, not any equitable or injunctive relief, of the instant federal action based on the *Colorado River* abstention doctrine. It is Perry who decided not to seek amendment of her State complaint, but rather filed a second complaint in federal court, knowing she had already filed a complaint in the State court and had informed the State court in her complaint of her intentions to

15

amend the State complaint after she received her right to sue letter(s) from the EEOC. The unclean hands concept is not applicable to the Motion to Dismiss in this case.

### E. Other Arguments Raised by Defendants

Because the Court is abstaining from exercising its jurisdiction over the instant matter based on the *Colorado River* doctrine, the remaining arguments raised by Defendants are now rendered moot as to the Younger Abstention doctrine, and the Time-Barred and failure to state claims arguments regarding the Title VII and ADEA claims.

### III. CONCLUSION/ORDER

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion to Dismiss (ECF No. 6) is GRANTED.

IT IS FURTHER ORDERED that this action is DISMISSED and designated as CLOSED on the docket.

s/Denise Page Hood  
DENISE PAGE HOOD  
United States District Judge

DATED: November 6, 2024